UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSCAR ARANA,

    Petitioner,

v.

RON DAVIS,

    Respondent.

Case No. 16-cv-05655-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Oscar Arana seeks federal habeas relief from his state conviction for aggravated mayhem on the grounds that (i) there was insufficient evidence to support a finding of the specific intent necessary for his conviction; (ii) the trial court erred in refusing his request to include a jury instruction on attempted aggravated mayhem as the lesser included offense; (iii) the disfigurement element of aggravated mayhem is unconstitutionally vague; and (iv) defense counsel rendered ineffective assistance.[1] Because these claims lack merit, the petition is DENIED.

## BACKGROUND

In 2010, Arana stabbed Jorge Alvarado four times, thereby permanently paralyzing him from the chest down. (Ans., Dkt. No. 10-5 (State Appellate Opinion) at 182, 184.[2]) The state appellate court summarized the facts of the case as follows:

---

[1] Respondent also discusses a claim that the trial court abused its discretion for failing to strike a sentence that was listed in the probation report. (Ans., Dkt. No. 9 at 29.) This claim does not appear in the operative petition nor in the order to show cause (Dkt. No. 6.) Because this claim was not offered as grounds for relief, the Court will not address it.
[2] *People v. Arana*, No. A139425, 2016 WL 775596, at *1 (Cal. Ct. App. Feb. 29, 2016), as modified by denial of reh'g (Mar. 21, 2016).

On November 3, 2010, around 9:00 p.m., Jorge Alvarado, his cousin Luis Alvarado, and their mutual friend Christopher So were heading home from San Francisco's Chinatown. Near Union Square, they saw people they knew standing on the steps near the fountain outside the Levi's store at the corner of Stockton and Post Streets. [Arana], then 20 years old, was with the group. Jorge knew him because they went to high school together and hung out with the same people. Luis and Christopher were also acquainted with [Arana]. Christopher greeted [Arana] amiably. He recalled that [Arana] was 'drunk as fuck.' No one else appeared drunk to him.

As they arrived, Jorge saw [Arana] trying to pick a fight with someone for about 5 to 10 seconds before others in the group stepped in to calm [Arana] down, and the other man walked away. Jorge could tell [Arana] was drunk, and he thought that was why [Arana] had been aggravating the other man.

[Arana] then asked Jorge 'where [he, Jorge] was from.' The question was strangely assertive, and Jorge did not know if [Arana] was trying to pick a fight or did not recognize him. Jorge jokingly answered, 'City College,' where he and [Arana] had taken a gym class together. Jorge testified that this line of conversation ended: 'I think once he saw that I wasn't going to continue with that type of conversation he just dropped it.' Jorge then greeted [Arana]: '. . . in a playful manner I was like, 'what's up, bitch ass nigga?' [Arana] did not react; he just looked at him blankly. Jorge was not afraid of [Arana] or concerned for his safety.

Later, [Arana] offered Jorge some liquor from a water bottle. Jorge drank some and discovered it was just water. 'So I called him [Arana] stupid for that, and everyone else laughed. And I guess he got mad and left from there. I didn't see him.'

Shortly thereafter, Jorge heard [Arana] call out his nickname, 'Goofy.' Jorge turned, and [Arana] approached him quickly from behind, coming down the steps of the plaza. With a clenched fist, [Arana] hit Jorge several times in the upper back using a 'cuffed slightly over hand' motion and a hook, as in boxing. Jorge felt like he was being punched three times in quick succession. After the fourth blow, he fell to the ground, down the steps. He remembered not being able to get up; he could not move his legs.

As Jorge fell, [Arana] stood on the steps with a clenched fist for about 15 seconds. He looked 'kind of angry, kind of aggravated.' Christopher asked [Arana], 'What are you doing?' [Arana] did not respond and quickly left the scene.

> The punches actually were stabs, one of which almost completely transected Jorge's spinal cord, causing lower limb paralysis. When Jorge woke up in the hospital, he could not move any part of his body below his chest. He had three stab wounds to the left upper back and one in the left armpit. Jorge also had pain in his left leg that went away with medication. Jorge spent six weeks in the hospital. He was still taking pain medication at the time of trial.
>
> Photographs showing Jorge's scars and a ruler were admitted into evidence. The top two scars on his back were "v" shaped; the lower scar on his back and the scar in his left armpit were straighter.

(Ans., Dkt. No. 10-5 at 183-184, 186.[3])

A San Francisco Superior Court jury found Arana guilty of aggravated mayhem and assault with a deadly weapon. He was sentenced to eight years for the mayhem conviction, and his nine-year sentence for assault was stayed. (*Id.* at 189.) Arana's efforts to overturn his conviction in state court were unsuccessful. This federal habeas petition followed.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

---

[3] The page numbers cited are those generated by the Court's electronic filing system.

3

of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I. Sufficiency of the Evidence

Arana alleges there was insufficient evidence to establish specific intent to commit aggravated mayhem. (Pet., Dkt. No. 1 at 6.) Rather, as he contends, the evidence supports at most a finding of "an indiscriminate attack," which is insufficient to prove he had the specific intent to permanently disable or disfigure within the meaning of California's mayhem statute. (*Id.*)

This claim was rejected on appeal. Substantial evidence supported the verdict, the state appellate court found:

> [Arana] stabbed Jorge forcefully and repeatedly in a vulnerable part of his body, his upper back near the spinal cord, supporting a finding that the attack was controlled and focused and intended to inflict serious injury. [Arana]'s initial aggressive questioning of Jorge ('Where you from?'), Jorge's greeting to [Arana] ('What's up, bitch ass nigga?'), and [Arana]'s angry reaction after Jorge called him stupid, support a finding that [Arana] was angry, and there was antagonism between the two men. [Arana] called out Jorge's neighborhood nickname immediately prior to rushing down the steps toward him and stabbing him from behind multiple times, supporting a finding that [Arana] targeted him. When Jorge fell down the steps,

4

> [Arana] stood there for some 15 seconds, watching, supporting an inference that [Arana] wanted to make sure he had achieved his objective of maiming Jorge. [Arana] then left the scene immediately, and apparently discarded the knife, which was never found, suggesting his presence of mind and consciousness of guilt.

(Ans., Ex. 10-5 at 194-195.)

When reviewing a state court's conviction for sufficiency of the evidence, a federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). In addition to this highly deferential standard, a federal court must accord "considerable deference" to a state court's determination that there was sufficient evidence under *Jackson*. *Id.*

Mayhem occurs when a person "intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body" under circumstances "manifesting extreme indifference to the physical or psychological well-being of another person." Cal. Penal Code § 205.

Sufficient evidence was presented at trial to support the jury's finding that Arana had the specific intent to permanently disable or disfigure Alvarado. This intent can be reasonably inferred from the following facts. Repeatedly stabbing Alvarado in the same, vulnerable area (his upper back near his spinal cord) supports an inference that the attack was focused rather than indiscriminate. Furthermore, knifing a person near his spinal cord manifests to any reasonable mind an "extreme indifference to the physical . . . well-being of another person." That Alvarado was paralyzed by the knife injuries provides additional and highly convincing support for this inference. It is difficult to see how such a deeply damaging attack was indiscriminate or unmotivated by an intent to disable. Further evidence of intent can be inferred from Arana's anger at Alvarado for calling him "stupid";

5

1   his calling out Arana's name immediately before launching his attack; and his waiting to
2   see the effect of the knifing. On such evidence, the jury's determination was not so
3   insupportable as to fall below the threshold of bare rationality. The state court's rejection
4   of Arana's claim was therefore reasonable and is entitled to AEDPA deference. This claim
5   is DENIED.

## II.     Jury Instruction on Attempted Aggravated Mayhem

Arana claims his due process right to present a complete defense was violated when the trial court refused to include an instruction on attempted aggravated mayhem as a lesser included offense to aggravated mayhem. (Pet., Dkt. No. 1 at 10.) The state appellate court summarized this claim thusly: "[T]he jury reasonably could have found that although [Arana] had the specific intent to *disfigure* Jorge, the act of stabbing him did not result in *disfigurement* and, thus, was merely an attempt." (Ans., Dkt. No. 10-5 at 198.)

This claim was rejected on appeal. Arana failed to provide any evidentiary basis at trial for giving the instruction. "The theory that [Arana] intended to disfigure Jorge by inflicting the scars, but that stabbing Jorge repeatedly failed to accomplish that objective, was never presented in the trial court." (Ans., Dkt. No. 10-5 at 200.) An instruction on attempted aggravated mayhem would not, therefore, have embodied the defense theory of the case. Furthermore, any error was harmless. "[Arana] does not explain how the four scars (two of which were straight and approximately four centimeters and two centimeters in length, and two were "v" shaped and approximately five by three centimeters and three by two centimeters) were not disfiguring." (*Id.* at 201.)

Habeas relief is not warranted here. The failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional claim. *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000). Though circuit law states that "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule," *id.* at 929, circuit precedent does not institute clearly established federal law under AEDPA, *see Renico v. Lett*, 559

U.S. 766, 778-779 (2010). Also, Supreme Court precedent does not favor *Solis*'s interpretation of the due process right to present a complete defense. The cases in which the Supreme Court has invoked this principle "dealt with the exclusion of evidence . . . or the testimony of defense witnesses," not with the denial of a lesser included offense instruction. *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993).

Furthermore, even if *Solis*'s exception were clearly established law under AEDPA, Arana has not shown that there was substantial evidence to warrant giving the jury his desired instructions. He presented no evidence at trial to support his theory and any contention that the scars (as described by the state appellate court) were not disfiguring is not supportable.

The state appellate court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

### III. Constitutionality of Aggravated Mayhem Statute

Arana claims the disfigurement element of aggravated mayhem is unconstitutionally vague. (Pet., Dkt. No. 1 at 15.) In support of this, Arana points to the jury's question during deliberations:

> During deliberations, the jury sent a note to the court asking, 'In the context of aggravated mayhem, what is the definition of disfigurement? Are all stab wound scars disfigurements? Internal, external, cosmetic?' After conferring with counsel, the court provided the following response: 'While not every scarring wound constitutes disfigurement in the context of aggravated mayhem, it is up to the jury to decide whether the injuries in this case constitute disfigurement.'

(Ans., Dkt. No. 10-5 at 196.)

This claim was rejected on appeal. "Based on the statutory language, the long history of disfigurement as an element of mayhem, and case law that has construed the term, we have no trouble concluding defendant's void-for-vagueness challenge has no merit." In sum, the statute employed words of long usage and common sense meaning. Furthermore, any error was harmless because the jury could have convicted under the disabling theory of mayhem. Injuries must be either disfiguring *or* disabling to meet the

7

requirements of mayhem. Arana's attack left Alvarado paralyzed from the chest down, which certainly satisfies the disabling element of mayhem.

To comply with due process, a state must "provide meaningful standards to guide the applications of its laws." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). A law is unconstitutionally vague if it does not provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement. *See id.* at 357-58. To avoid constitutional vagueness, a statute or ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. *Vlasak v. Superior Court of California*, 329 F.3d 683, 688-90 (9th Cir. 2003).

A statute will meet the certainty required by the Constitution if its language conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices. *See Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993). In a facial vagueness challenge, the court must look to the plain language of the statute, as well as construe the statute as it has been interpreted by the state courts. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 941-942 (9th Cir. 1997).

The disfigurement element of the mayhem statute is not unconstitutionally vague, as an analysis under *Vlasak* shows. An ordinary person would understand the meaning of "disfigurement," and it was to that standard that the trial court directed the jury. "Disfigurement" is not a complex or obscure word, nor a term of art specific to the legal profession. Rather, it is an everyday term, whose meaning the average juror would easily know and understand. While the statute fails to define disfigurement with as much detail as Arana believes it should have been defined, when a term has a well-settled common law meaning, it will not violate due process "notwithstanding an element of degree in the definition as to which estimates might differ." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

Having looked at the plain language of the statute, I will now look at how the state courts have looked at mayhem's "disfigure" element. There is no indication in California case law that "disfigure" is unconstitutionally vague. "[T]he modern rationale of the crime [of mayhem] may be said to be the preservation of the natural completeness and normal appearance of the human face and body[.]" *People v. Newble*, 120 Cal. App. 3d 444, 451 (Cal. Ct. App. 1981) (citing LaFave & Scott, *Criminal Law* (1972) ch. 7, § 83, pp. 614-615.) A scar or wound can be considered disfiguring even if it is on a part of the body normally hidden by clothing.[4] While the trial court conceded that not every scarring wound constitutes disfigurement, it found that was a question of fact suited for the jury. *Id.* at 453. Furthermore, the state appellate court reasonably determined that any error was harmless. The jury could have found Arana guilty of mayhem under the disabling element of mayhem, an element Arana does not challenge as vague.

The state appellate court reasonably determined that the mayhem statute provides fair notice of the prohibited conduct and is not ripe for arbitrary enforcement. Here, Arana had sufficiently fair notice that stabbing Alvarado four times resulting in scarring and paralysis could be found to be a disfigurement. The state court's decision is reasonable and is entitled to AEDPA deference. This claim is DENIED.

**IV. Assistance of Counsel**

As noted above, during deliberations the jury sent a note to the trial court regarding the meaning of disfigurement. ("In the context of aggravated mayhem, what is the definition of disfigurement? Are all stab wound scars disfigurements? Internal, external, cosmetic?") Arana claims defense counsel rendered ineffective assistance by agreeing with the trial court's response to the jury's question, rather than objecting to the instruction on constitutional grounds. (Pet., Dkt. No. 1 at 21.)

---

[4] Examples of this are cigarette burns to the breasts (*People v. Keenan*, 227 Cal. App. 3d 26 (Cal. Ct. App. 1991)); a breast nearly severed by a box cutter (*People v. Pitts*, 223 Cal. App. 3d 1547 (Cal. Ct. App. 1990)); and tattoos forcibly made on the breast and abdomen (*People v. Page*, 104 Cal. App. 3d. 569 (Cal. Ct. App. 1980)).

9

The appellate court summarized the relevant facts as follows:

> [After receiving the jury's note, t]he court discussed the question with counsel outside the presence of the jury. In crafting a proposed response, the trial judge told counsel that he looked at the jury instructions, the statute and case law, and noted that no California case defined disfigurement in a particular way. The court observed that 'one thing does appear to be consistent throughout, that is, it has to be some very significant injury. The fact that it's visible or in an area which is less visible isn't determinative.' The court continued: 'And I think as the People will point out, you can burn someone's breast with a cigarette, an area which isn't normally viewed, you can tattoo someone permanently in an area which may not be viewed, and the fact that it is usually concealed from the public doesn't relieve the defendant of responsibility for mayhem. [¶] So the best I can come up with is a conclusion that not every visible scarring wound is mayhem. But as to what constitutes disfigurement, I think is ultimately for the jury to decide.'
>
> The prosecutor then suggested including some examples of mayhem from case law. Defense counsel objected to giving examples because 'there is no way for the Court to give enough examples to define the meaning of it.' Defense counsel continued: 'I think the instruction the Court proposes to give is appropriate. And I think the case law is clear that not every, as the Court is going to say, not every scar is disfigurement, and based upon the case law it's up to the jury to decide.'
>
> Following this discussion, the court answered the jury's question as follows: 'While not every scarring wound constitutes disfigurement in the context of aggravated mayhem, it is up to the jury to decide whether the injuries in this case constitute disfigurement.'

(Ans., Dkt. No. 10-5 at 207.)

Arana's claim was rejected on appeal. The trial court's instruction was consonant with California law in that it "effectively instructed" the jury that "any permanent scar constituted disfigurement," even if it can be medically repaired. (*Id.* at 210.) The instruction properly assigned to the jury the factual determination of whether Alvarado's injuries constituted disfigurement. (*Id.* at 210-211.)

Arana's claim fails. Because the state appellate court concluded that the instruction properly embodied state law, this Court's inquiry is at an end. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus). No effective counsel would object to an instruction that fully complies with California law. Arana therefore has not shown that counsel's performance was deficient, let alone whether that alleged deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984) (a habeas petitioner must show both that counsel's performance was deficient and that the deficient performance resulted in prejudice); *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (if a petitioner fails to show that counsel's performance was deficient, it is unnecessary to consider the prejudice prong).

The state court's rejection of this claim was reasonable and therefore is entitled to AEDPA deference. This claim is DENIED.

## CONCLUSION

The state court's adjudication of Arana's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law. Further, the state court's findings did not result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Arana may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** February 16, 2018

WILLIAM H. ORRICK
United States District Judge